All righty, next case of the morning is number 17-20812, Evanston Insurance v. Mid-Continent Casualty, and Mr. Cooper. Thank you, Your Honor. On November 13th of 2013, Global Waste employee Marlon Diggs drove a Mack truck approaching the toll plaza on Beltway 8 in Houston. He never applied his brakes. He struck a Toyota, excuse me, a Honda Accord, drug it into the attenuation barrels, then struck the toll booth, then struck a Dodge Charger. After striking the Dodge Charger, he fell out of the truck, and the truck continued on with the Dodge Charger, where it ran into a wall, resulting in a fire and in the death of the occupant of the Dodge Charger. Now, the question before the Court today, and there really is only one, is whether or not that scenario that we just described was one, two, or three vehicles previously, right? There was two vehicles previously, but they're not an issue here in this case today. I'm just wondering, did the company ever do an autopsy on the fellow? The question was what was happening to Mr. Diggs. The autopsy, I believe there was one, but they could not find whether or not he had a heart attack, a stroke, or some other physical problem, and that was never identified either in the underlying case or in the coverage case. But for whatever reason, he never applied the brakes, and this resulted. Again, Mid-Continent said there was one accident, Evanston said there was three, and then the magistrate judge, in her opinion, which was adopted by Judge Miller, found there was two between, compromise or what. Now, our starting place is the Mid-Continent policy, and we define an accident to mean continuous or repeated exposure to the same conditions resulting in bodily injury or property damage. The other relevant portion of the policy is the limit of insurance provision, and the limit of insurance provision states that regardless of the number of vehicles involved, and I'm paraphrasing, in the accident, the most that Mid-Continent will pay for any one accident is $1 million. This limit of insurance provision further states that all bodily injury, property damage resulting from a continuous or repeated exposure to substantially the same condition will be considered as resulting from one accident. Now, the question as to how many accidents there are depends upon the test you apply. In the United States, there are three tests currently that are out there, the cause test, the effects test, and the unfortunate events test. To date, Texas, the courts applying Texas law have applied the cause test. Now, let me preface that by saying the Texas Supreme Court has never had this issue before. Well, the, you know, put more pointedly, the question is whether this is more like the birdseed case and the sex abuse case or the aerial spray case. The Faust versus Pinkhoff's case. Right. Faust, we know, was a court of appeals petition denied 1998 case where there was, as the courts very aware, crop dusting, and the crop duster would come in, land, reload with the herbicide, go back up, spray some more, come back in, land, and they damaged property, more than one piece of property surrounding the field that was supposed to be dusted. And the plaintiff's net case said it's multiple occurrences because you started, you stopped and reloaded, started again, stopped and reloaded. But the San Antonio court of appeals said no, that basically each, they said a new occurrence did not result each time the insured returned to the air after landing the plane to reload it with herbicide, rather each pass resulted in the creation of the same general conditions. And what the court there said was it was the process of crop dusting that damaged all the surrounding landowner's property. It was that act, that process, that event that resulted in the damage, and we're not going to subdivide it as far as each pass or each reload. Now we've got that. Now, if that case, well, if we applied the court's ruling, then basically each time the plane landed and did a new pass, there would have been a new accident or a new occurrence. But the court of appeals in San Antonio said no. Now the Pinkhoff's case is 1971 from this case, from this court. And again, importer of birdseed that was contaminated, sold to eight different distributors. The distributors then sold it to their clients, and we had birds dropping like crazy all over the United States. And the question was, how many different occurrences were there? And what this court said is, we're going to look at the defendant's conduct, not at the number of dead birds that we have, but we're looking at the defendant's conduct that caused the liability. And this court said it was the sale of contaminated birdseed that resulted in Maurice Pinkhoff's liability. And if we look, again, at the conduct of the defendant, not the effects, because we don't have to follow the effects test, then there were eight separate accidents or eight separate occurrences from that case. But again, we're looking at it from the insurance point of view. What gave rise to the legal liability? We've cited the H.E. Butt case, which was an H.E. Butt employee molesting two children on separate occasions, and the question was, was it one occurrence or two occurrences? It was a plurality opinion. There was no majority in that case. But one of the opinions, the leading opinion by Judge Garza said this. He said, this is the same type of cause analysis undertaken by other courts. While a single occurrence may result in multiple injuries to multiple parties over a period of time, if one cause is interrupted and replaced by another intervening cause, the chain of causation is broken, and more than one occurrence has taken place. And so, at least in that case, the court was looking to whether or not it was an unbroken chain or a broken chain. And we know in this case that once Mr. Diggs entered the toll plaza, he didn't stop. He didn't apply his brakes. He impacted the accord. He impacted the toll booth, and he impacted the Dodge Charger in a continuous, unchanging process. What is the effect in this case of the uncertainty of what really happened? It seems to me one way to try to make some of this fit is that he was unable to control, he was alive, unable to control, whatever the problem was, then he falls out of the vehicle and is driverless after that, maybe two different occurrences, or was he already dead or already incapacitated and it was driverless the whole time? It seems to me that one of the problems with all these tests is not really knowing what happened. And I would agree with you, and we try to find out what happened from the underlying case. But the question is this. We know there was erratic driving where there was medically induced, sleep induced, whatever induced. We know that there was no application of brakes and that there was erratic driving throughout this entire episode. And so the question is then, you know, was the erratic driving at the toll booth multiple accidents or was it one accident? Well, would you have stepped back had they, I take it that they must have settled the first two claims, the Dodge Ram and the Ford F-150 within the policy limits so they weren't calling on your client at that point? Well, we had the primary. We settled some property damage claims earlier. And then for the Honda case, we paid $962,000, something like that. And then the remainder was paid by Evanson. We paid about $38,000 or so, toll booth and some property damage claims. Also when he hit the Accord, there was some material debris that flew off and hit another car as well. So there were some about $38,000 in property damage claims that were paid and then we pay the remainder of our limits, the $962,000 toward the occupant of the Honda. The rest of it was paid by Evanson within their limits. We have cited to the court that majority of jurisdictions follow the cause test. And Crouch, we have cited in our brief, says that this is the cause test. According to a number of cases, the per-accident clause is to be construed on the basis of the cause of the accident rather than its effect. The cause of the accident rather than its effect. And this is Stephen Plitt, who's editing Crouch now, he says, such courts consequently hold that where one proximate uninterrupted and continuing cause results in injuries to more than one person or damage to more than one item of property, there is a single accident or a single occurrence within the meaning of the per-accident clause in the liability insurance policy limiting the insurer's liability to a certain amount for each accident or occurrence. And you look at the cases that are coming down recently, and we've cited courts, some more recent ones, one is a 2010 Georgia Supreme Court case, which was certified from the federal system to the Georgia Supreme Court, and that was where a automobile hit two cyclists. Two separate collisions within 20 feet a second apart. The cyclists were arguing, well, this was two separate occurrences, since there were two separate collisions. The Georgia Supreme Court said, look, this policy doesn't even have a definition of accident, but it has the same limit of liability section that the mid-continent policy has. And the court said, if you were to treat this as two separate incidents or two separate accidents, you would render that provision meaningless. And they said the only way to interpret this policy is to hold that, again, if you strike two separate vehicles, bicycles, whatever, in a continuous action, it has to be one accident. We also cited a case from two years ago, Just v. Farmers Auto Insurance out of Iowa Supreme Court. It was not certified, but it was a case where an SUV was driving on the wrong side of the road and got hit by a tractor trailer. The SUV was disabled, and a few seconds later, a motorcycle came up and hit it, injuring the motorcycle driver. The motorcycle driver argued, well, this is really two separate occurrences. The Iowa Supreme Court in that case said, no, the undisputed facts do not reveal any intervening or superseding cause. Both impacts resulted from an unbroken causal chain. The collisions were closely related in space and time and traced their origin to a single cause, which is exactly the case that we believe we have here. Let me step back and try to ask my question a little more carefully. Did you, as the primary carrier, treat the two previous collisions on the freeway as a separate accident from the series of problems at the toll plaza? Originally, Your Honor, we did. We treat them as the same one. Later on, when we were in this litigation, a decision, there was the Gardner collision that occurred five minutes before this. There was the Garcia collision that occurred two minutes before the toll booth episode. The decision was made that we're not going to challenge that, that they were too far removed, too far, too remote, five minutes earlier before this accident. We decided it was too attenuated, too far, and we decided not to challenge those. So, is that wrong? Don't know. Part of it had to do, I'll be real honest with you. Based on the position you're taking today, it seems like it would be wrong. Well, the question is, in some of the cases, for example, the Rawls decision from this court applying Florida law, one of the things the court looked at was, did the driver regain control at any point during the process? Now, it's a Florida law decision. And the court, this court said under Florida law that there was an inference that the driver had regained control. And because he had regained control, then it was two different accidents. And we could not say, when we looked at the evidence, whether or not Mr. Diggs, five minutes when he sideswiped the car up the beltway, or two minutes, whether or not he regained control. We had no evidence. One way or the other. So the decision was made just not to make those an issue, not to challenge it, but to challenge the ones that were up here at the tollway where we knew what happened. Where there was an accident reconstruction by the police officer, where they went in and we know that there was no application of brakes, there was no skid marks, and that this was an uninterrupted, intervening chain. We couldn't really say what happened earlier. Well, if he had regained control, don't you think he knew he hit those two cars? Wouldn't your basic Mack truck pull over and say, excuse me? Sometimes they do. And sometimes people, when they hit a car, don't pull over. It would really be speculation on our part because of the fact that Mr. Diggs, unfortunately, was not alive. Any other questions? Well, the first two were a lot smaller damage. They were. No question about it. They were side-swap, property damage cases. Okay. Mr. Wong. Good morning, and may it please the Court. My name is Warren Wong, and I represent the Plaintiff and Appley Evanston Insurance Company in this case. Before I begin my presentation, let me briefly address one point raised by the Court and by Counsel for McContenant in their opening argument, and that is, what is the relationship between the collisions that occurred at the Toll Plaza and the first two collisions that occurred two minutes and five minutes before the collisions at the Toll Plaza? Counsel for McContenant said in his opening argument that the reason why they did not dispute that the first two earlier accidents were not part of the accidents at the Toll Plaza was because they were remote in time and distance from the accidents at the Toll Plaza. But they can't run from their admission that those earlier accidents were separate accidents simply because they were more remote in time and distance, because under the test that they're asking this Court to adopt in determining the number of accidents and occurrences under the insurance policy in this case, they're simply asking this Court to look at what was the overarching cause of the collisions in question. And their theory of the case has always been the failure to control speed was the cause of all of the collisions in this case. And so if that's true, then these earlier collisions that were very remote in time and distance were not part of the accidents that occurred at the Toll Plaza because they resulted from the same alleged overarching cause. So their position that they take with respect to the earlier accidents simply conflicts with the test that they're asking this Court to adopt with respect to the collisions at the Toll Plaza. Now we agree that the salient question before this Court, and indeed the only question before this Court in today's appeal, is whether the collision between the insurance truck and the PAL car constitute one or two accidents under the insurance policy in question. And what everyone agrees on, and what I mean by everyone, is the District Court, this Court, Evanston and McCotten agree, is that the governing test in determining the number of accidents and occurrences is the so-called cause test. And that is established by this Court's decisions in the H. E. Buck Grocery v. National Union Fire Insurance case, the Maurice Pinkoff's case, as well as the U. E. Texas 1 case. Now under the cause test, all the courts and the parties agree that the test defines an accident as the specific event that caused the injuries in question and gave rise to the insurer's liability. That is the specific formulation of the test that the District Court adopted. That is the specific formulation of the test that this Court has adopted. It is also the specific formulation of the test that both parties in this case adopted, including McCotten in this case. So really the parties don't agree on what the governing test is, and so that also argues against the need to certify this issue to the Supreme Court. However, where the parties diverge is what exactly is this cause test and how is it applied under the facts of this case. The position that they want you to adopt is that it is the overarching cause of the accident that is relevant in determining how many accidents and occurrences there are under the insurance policy in question. However, the overwhelming precedent from this Court that this Court would have to reverse or set aside or distinguish actually holds that it is the number of injurious contacts between the insured's vehicle and another vehicle or object. And this is confirmed by the holdings in a number of cases from this Court. This Court asked Counselor McCotten what are the relevant cases in this case. One of them is the H-E-Bug grocery, which I'll call it H-E-B because that's what we call it here in Texas, versus the National Union Fire Insurance case. In that case, this Court held that two incidents of sexual assault committed by the same employee of the insured store constituted two occurrences, even though the alleged overarching cause of the injuries in question was the insured's negligence in hiring, retaining, and supervising the employee in question. However, under the overarching cause test adopted by, espoused by McCotten, that would have been only one accident, but this Court held that there were two. Well, they were two separate victims and two several weeks apart, right? That's correct, Your Honor, and that's the same set of facts that we have in this case in the sense that— Well, not really. I mean, we have, what, 90 seconds apart. Your Honor, our position is that based on the case law, H-E-Bug and several other cases I'll discuss in a minute establish that the amount of time between the collisions is not really relevant. What is relevant is that there was any time at any distance separation between the two cases that establishes that they were separate and independent collisions, and that's really all that we need to establish. One of the worries in H-E-B is that it's uninterrupted, and it does seem to me that the H-E-B case does raise very much the question, in the way these preceding accidents in our case do, that are not so much at issue today, is just how uninterrupted, how much was the causation continuing? It seems to me to say that the H-E-B case and this case are factually indistinguishable as a stretch. We may accept it, but it is a stretch, because you do have the interruption in the activities and things that could have changed the course of what was happening, and it seems like the situation here is, as far as we know what was going on, nothing could have changed the course, almost literally, of what was happening with that Mack truck. Yes, Your Honor, I understand, Your Honor, but I respectfully submit that the H-E-B decision was not decided based on the temporal separation between the two incidents of sexual assault that occurred at the store. Instead, what this Court looked at in determining that they constituted two separate occurrences was that each occurrence resulted in different injuries and led to different liabilities to the insured store, much like in this case where we had two collisions, where even if they may have occurred within a closer temporal and distance proximity, they still gave rise to different injuries to different persons and gave rise to different liabilities to the insured. The H-E-B also involves, though, the motives, not motives, the intent of the actor, and he had to form the intent to commit each of those assaults at separate times, and that's the interruption part as well. It just is not a clean fit, I hope you would at least acknowledge that, into this physical motion, this unstoppable truck until, in fact, it ran into a hard enough object, and that was uninterrupted by anything, and no need, no forming of mens rea to commit the offense as in the H-E-B decision. Sure. Yes, Your Honor. Again, I respectfully submit that that was not the basis that the Court relied on in H-E-B in order to determine that they were separate occurrences, and maybe it might help if I can point to a couple of other cases that are maybe closer on point to the specific facts in this case, and that is the Esparza decision out of the Eastern District of Texas. That case is virtually on all fours with the facts in this case in the sense that they involved substantively identical insurance policy provisions and language. But in the Esparza case, that involved a situation where the insured car crossed over a center line, hit one car, and then went off, went down the road a further distance, and hit another car. The collisions, according to the facts of that case, were that they occurred virtually simultaneously, much like Midcontinent alleges the two collisions between the Williams car and the Powell car occurred in this case. I'm . . . who wrote the Esparza decision? I believe it was a judge in the Eastern District of Texas. I honestly don't remember. Okay. The judge in that case. Who? Judge Schill. And another . . . Is that consistent, though, with the crop dusting case? It seems to me that you can't make those two fit together. In Faust, is Faust the name of the crop dusting case? Sure, correct. In the Faust case, it's important to take a look at a certain passage from that case, and let me go ahead and quote it for you. It's a little long, but it directly answers your question, Your Honor. In the Faust case, the court concluded that the injury in question resulted from the single act of crop dusting the particular field in question. And even though it did involve multiple passes over the field, the court actually said that those multiple passes were still, nevertheless, the result of one actual procedure of dusting the crops. I'll take off my glasses. It states, the San Antonio Court of Appeals noted that the herbicide, quote-unquote, the herbicide was applied one time in a process that required several passes over various tracts of land. The application process constituted a single procedure, and it's this procedure as a whole that caused the damage to the cotton crop. And that's on page 335 of that decision. And so in that case, the court concluded that there was simply one injurious act by the insured, and therefore, there's only one occurrence. Here, there's no dispute that there were multiple injurious acts or contacts between the insured's vehicle and the Williams car and the Powell's car, on the other hand. So there were two distinct collisions in this case, whereas in the Faust case, there was simply one act of dusting the crops. Okay. So in addition to the H.E. Butt case, as well as the Maurice Penkoff's case and the Esparza case, we can also point to specific decisions by this court which have rejected the overarching cause test espoused by MidContinent in this case. And I'll point this court to two decisions. One is the UE Texas 1 Barrington Limited case, a 2003 decision that was authored by Judge Jones, as well as the Maurice Penkoff's case, which I just discussed. The UE Texas 1 Barrington case was a case that involved a scenario where an apartment complex consisting of multiple buildings suffered damage to a number of those buildings due to pipe leaks underneath each of those buildings. The question before the court in that case is the question before the court in this case, and that was, how many occurrences were there under the policy in question? This court concluded that the number of occurrences was the number of buildings that was damaged by the pipe leaks, even though the alleged overarching cause of those pipe leaks was the allegedly negligent installation of the pipes underneath the buildings in the first place. So if this court had adopted the overarching test espoused by MidContinent, they would have concluded that there was only one occurrence, but the court concluded that there were multiple concurrences. And significantly, they based that decision on a decision by the Houston First District Court of Appeals in a case called Goose Creek Independent School District. Significantly this court . . . That was the arson case, right? Correct. That was a situation where the independent school district had suffered two fires to two of its buildings on the same day. And it's significant, because in that case, the Houston Court of Appeals concluded that there were two incidents or two occurrences under the insurance policy in question, rather than one, even though there was evidence in an allegation that both fires were caused by the same person, the arsonist in question. The court said that's simply immaterial, whether the same person caused both fires, because the bottom line is that there were two fires that caused two distinct injuries to two different schools. One of the things that was relied on in that case, it seems to me, is the temporal spacing of them. And among the holdings in the case . . . well, distinctions in the case, is that the two fires were separated in space and time, and one did not cause the other. I mean, one fire spreading to the other wasn't the case. So your reluctance to have us look at time as being relevant here doesn't seem supported by at least that analysis. The time is a factor. Yes, Your Honor. As I think it was in ATB, but we'll have to decide that. Correct, Your Honor. It should be noted that the fires occurred, I believe, on the same day within an hour or two of each other. And so, they were in closer temporal proximity than the ATB case. But in addition to the Esparza case that I mentioned, where the Eastern District found that there were multiple accidents or occurrences, even though the collisions occurred almost simultaneously, there's another decision we can point to, and that is the Rawls case. That was also a case decided by this Court. I believe it was in 1969. Now, concededly, in that case, this Court was applying Florida law, but there was no indication that Florida law applied a different test than the cost test that Texas courts have applied. But the important point from the Rawls case is that in Rawls, it also involved a situation where the insured car was involved in a police chase and hit two cars almost simultaneously in much the same fashion that occurred in this case. Yet this Court concluded that under the cost test, they involved multiple accidents or occurrences. Again, if this Court applied the overarching cost test as espoused by McConn, they would have concluded that there was only one accident or occurrence based on the insured's alleged negligent driving during the police chase, but they did not. So let me read you one more quick passage from this Court's UE Texas 1 case to confirm that this Court has rejected the specific test that McConn asked this Court to apply in this case. This Court stated, Goose Creek instructs us not to look to any overarching cause, but rather to focus on the event that gave rise to fireman funds liability under the policy. For example, in Goose Creek, the Court did not look to the existence of a single arsonist, but rather to the number of fires that caused the buildings to burn. Thus, in determining the number of occurrences under the fireman's fund policy, we should not focus on the alleged overarching cause, but rather on the specific event that caused the loss. In this case, the losses arose when the pipes broke, not when they were installed. The parties have stipulated that a different leak was responsible for the damage to each pipe. We agree with the District Court that each leak constitutes a separate occurrence as a matter of law. And this decision is important not only because it rejects the overarching test, but to go back to the point that Judge Southwick has raised, the Court did not consider the temporal relationship between when the pipe leaks occurred to be relevant in determining how many accidents or occurrences there were in an insurance policy question. They simply looked to whether there were separate events that caused different injuries and gave rise to different liabilities. Well, then I can't resist, I think you're nearing the end of your presentation, and I can't resist asking you the obvious question, which is, what do you do in a chain collision? Is that 20 separate accidents, or is that one? If by chain collision you mean a situation where the insured vehicle hits one car, that car then hits another car, that car then hits another car. Right. We would submit that that would be one accident, because there's only one injurious contact between the insured and the insured vehicle. And all the other collisions and all the other damage to the other vehicles resulted from that one collision. But then if as a result of that first rear end, the car that perpetrated it slides over into the other lane and hits another one, then that's a separate accident, according to you. Your Honor, I think that that would be the correct interpretation. Okay. So location is important. Like in the fire case, the distinction is that there were separate locations. And even in the sexual assault case, there occurred a considerable amount of time apart. So I don't see how you can rely on those cases for your position. Your Honor, I think the common theme of all of the cases by this Court which have held that there have been multiple occurrences or accidents is that they involve separate injurious contacts by the insured with another vehicle or another person. And the courts have not determined that the distance between the two incidents or the time between two incidents have been the relevant inquiry in determining whether they were separate accidents or occurrences. The bottom line is that those courts looked at whether they resulted in different injuries to different people, gave rise to different liabilities to different people. And that's exactly what the Court found determined and that's how they decided those cases. Even though some of those cases involved two incidents that occurred far away from each other or there was a significant gap of time between the two incidents. But they've also had the same conclusion that there was only one accident or occurrence when there were two car collisions, as in this case, that occurred virtually simultaneously. And I think that's how you can confirm that those particular facts aren't relevant in determining the number of accidents or injuries. I see I have about a minute and 50 seconds left. Let me briefly address the certification issue. This Court has established very strict standards for certification and they simply have not been satisfied in this case for a number of reasons. First of all, there's no dispute among the parties as to what the governing legal test is. It's the cause test. And there's also a long line of precedent by this Court which has applied the cause test in exactly the manner that Evanston argues for in this case and there is a long line of precedent that has specifically rejected the version of the cause test espoused by Midcontinent in this case. And furthermore, it's important to note that this Court has decided all of these cases involving the determination of how many accidents or occurrences there were without the need to certify the issue to the Texas Supreme Court. They've decided on their own based on a well-established Texas precedent. Well, counsel, I agree with you. This has more to do with applying a general understanding of a test to the special facts. But it does seem to me that the Supreme Court of Texas ultimately could give some help here even if we don't certify it this time, just how, from what level are you looking at the cause? You used the phrase overarching cause at times and I'm not sure that's completely definitive here. You can have an overarching cause in the pipe leak case of a bad construction or whatever, but individual causes of individual leaks, how does that relate to a car accident such as we're dealing with here? But probably not a good candidate for certification, but I don't know if I quite agree with you that we have a well-settled test. If so, we probably wouldn't be here. Thank you, Your Honor. Thank you, sir. Very quickly in rebuttal, Rawls, this court said, on the contrary, the only reasonable inference is that the insured driver had control of his vehicle after the initial collision. So in Rawls, there was an accident, he regained control, there was a second accident, and applying Florida law, this court said there were two separate accidents. Just like, you know, the accidents that occurred five minutes and two minutes up the road, if I was driving to this court from Dallas and I had an accident in Shreveport. We're talking hypothetically, right? Hypothetically. I flew. And then I had another accident in Baton Rouge, hundreds of miles away. I don't think anybody would say, well, that's one accident or whatever. That would be two different causes, two different accidents. The counsel also cited the UE Texas and the Goose Creek cases. And I think it's important for this court to realize those were property policy cases with different definitions. They don't have the limit of liability section that liability policies have. And when we're dealing with occurrences and accidents, it's important to look at the context. There was also cited in some of the briefing, I think ours, maybe is theirs, called Ran Nan, a 2001 opinion from this court. That was an employee dishonesty policy, and two employees stole money at two different times, and the question was, is that two triggers or accidents or occurrences under that policy, or is it one? And again, different language, different definitions, different types of policies, and so I think it's somewhat critical that we look and see that we're dealing with a liability policy, particularly with a commercial auto policy like we have here. Esparza was Judge Schell's case where it was a tractor trailer, the guy fell asleep, went across, he was on 75, went across the line, struck one vehicle, later on struck another vehicle. I think, with all due respect to Judge Schell, that they just got it wrong. They said they were following cause, but they were, in essence, following an effects test. The case has been rejected as being flawed in its reasoning by a Louisiana Court of Appeals case. The only case that's ever followed that decision has been this district court case, as far as the number of occurrences. Use of expert witnesses, some of the courts have followed that, but as far as following it on the issue of the number of accidents, the only case is this court. Now, counsel said the difference between this case and, let's say, the Faust case was the different injurious contacts, and we had different injuries to different people. Well, first off, in the Faust case, there were numerous landowners who had their cotton crops injured, not just one. There were numerous. Also, if he's right, and we're talking about injurious contacts, Maurice Penkoff's, everybody that ended up with a dead bird, had an injurious contact. And so, this court's decision in Maurice Penkoff's would have to be overturned because we know we had a bunch of them. The Twin City case that we've cited, which was out of the Western District of Texas, where there was road construction, and there was question about the signage, and there was three accidents on three separate days, and the court there said it was one accident, one occurrence in that case. So, what I believe counsel really is doing is saying, we're applying the cause test, but really, he's using effects test language, which this court, in which Texas courts, in which the majority of courts in the United States have rejected. So, I mean, I think that the key is, we can all call it the cause test, but Judge Southwick, as you said, the real issue is, how do we define that test? What is that test? And certainly, there is, from here today, a disagreement regarding what is that test. To be fair, the district court agreed with them. To be fair, that's true. We wouldn't be here otherwise if they would have agreed with us. But, again, the question is, did the district court apply the right test? We do not believe they did. Instead of the cause test, would it be the no intervening cause test? Well, what we believe, and we would argue if the court's looking at what is the cause test, is the test that's articulated in Couch as the prevailing one. And that is where one proximate, uninterrupted, and continuous cause results in injury to more than one item of property. There is a single accident or occurrence within the meaning of the per-accident clause in the liability insurance policy limiting the insurer's liability to a certain amount for each accident or each occurrence. And we believe that is the test. If I could continue, Chief Presider, and just one moment further, under that test, whose burden is it, you think, actually? We have the uncertainty about what happened here. I thought about that last night, about who has the burden of proof. Actually, I believe that they do, because they're trying to prove coverage and get more coverage. It's not an exclusion. It's a term to show more coverage. So for them to get more coverage, they have to show that there's two accidents as opposed to one accident. And typically, the party seeking coverage under an insurance policy has the burden and it shifts back to the insurance company for exclusions, and then back to the party seeking coverage for exceptions to exclusion. Maybe so. Thank you. Thank you, Judge. All right.